TEXAM OIL CORPORATION et al.,
Appellants,

v.

D. D. (Pee Wee) POYNOR, Appellee.

No. 5959.

Court of Civil Appeals of Texas.

El Paso.

July 24, 1968.

Rehearing Denied Sept. 18, 1968.

Stubbeman, McRae, Sealy & Laughlin, Milton L. Bankston, Midland, for appellants.

Finley & Scogin, Kermit, Aubrey Edwards, Big Lake, for appellee.

OPINION

PRESLAR, Justice.

This is a joint appeal by defendants Texam Oil Corporation and Charles C. Green, Jr., from orders of the District Court of Reagan County overruling their respective pleas of privilege.

Appellee D. D. Poynor brought this suit against Charles C. Green, Jr. and Texam Oil Corporation, alleging that Green made certain slanderous statements about him and that such statements were made as agent for Texam Oil Corporation in the course of his employment. Suit was in the county of the plaintiff-appellee's residence, and to sustain venue there against

the right of the defendants to defend such suit in the county of their residence, plaintiff relied on subdivision 29 of Article 1995, Vernon's Ann.Tex.Civ.St. The burden was on the plaintiff to allege and prove that his case came within that exception. A. H. Belo Corp. v. Blanton, 133 Tex. 391, 129 S.W.2d 619. The matter having been tried before the court without a jury, and the court having overruled the pleas of privilege, it is presumed that the court found the facts necessary to support its judgment. Defendant-appellants have brought forward a statement of facts and placed themselves in a position to question such presumed findings of fact, but we are of the opinion that the necessary venue facts are supported by the evidence and the judgment should be affirmed. Subdivision 29 of Article 1995 provides:

"Libel or slander.—A suit for damages for libel or slander shall be brought, and can only be maintained, in the county in which the plaintiff resided at the time of the accrual of the cause of action, or in the county where the defendant resided at the time of filing suit, or in the county of the residence of defendants, or any of them, or the domicile of any corporate defendant, at the election of the plaintiff."

Appellants do not question the presumed finding that a cause of action accrued, or that it accrued on a certain date, but it is maintained that the corporate defendant is not liable for slander by its agent unless made by authorization or upon ratification of the corporation. It is urged that there is no evidence or insufficient evidence to establish the additional venue fact of either authorization or ratification by the corporation. Appellant cites Cyrus W. Scott Mfg. Co. v. Millis, Tex.Civ.App., 67 S.W.2d 885, for the proposition that a corporation is not liable for slander by its agents unless made by authorization or

upon ratification, but this case seems to stand alone and does not represent the law in Texas as announced by cases decided before and after it. The opinion cites no Texas authority for the proposition announced. Also, as pointed out in Texas Plastics v. Roto-Lith, Ltd., 250 F.2d 844 (5 Cir. 1958), in commenting on the case, the requirement that there be an authorization or ratification by the corporation can be met without any formal corporate action relating to the particular acts or words. The great weight of authority in Texas follows the rule of law expressed in Great Atlantic & Pacific Tea Co. v. Harris, Tex.Civ.App., 75 S.W.2d 974 (dismissed):

"An action is sustainable against a corporation for defamation by its agent, if such defamation is referable to the duty owing by the agent to the corporation, and was made while in the discharge of that duty. Neither express authorization or subsequent ratification is necessary to establish liability. Mo. Pacific Ry. v. Richmond, 73 Tex. 568, 11 S.W. 555, 4 L.R.A. 280, 15 Am.St.Rep. 794; Southwestern T. & T. Co. v. Long (Tex.Civ. App.), 183 S.W. 421; Producers Refg. Co. v. Frazier (Tex.Civ.App.) 283 S.W. 880; Providence-Washington Ins. Co. v. Owens (Tex.Civ.App.) 207 S.W. 666; Houston Printing Co. v. Jones (Tex. Civ.App.) 282 S.W. 854; Priest v. Central State Fire Ins. Co., 223 Mo.App. 122, 9 S.W.2d 543; Daughtry v. Blanket State Bank (Tex.Civ.App.) 41 S.W.2d 527; Magnolia Pet. Co. v. Guffey (Tex.Civ. App.) 59 S.W.2d 174."

This language is quoted in Commercial Union Life Ins. Co. v. Moore, Tex.Civ.App., 160 S.W.2d 266, in an opinion by Justice Norvell, in which the plea of privilege of Commercial Union Life Ins. Company was denied on the basis that the statement by one Riha, the employee, taken in connection with the fact of his employment as an in-

vestigator, was sufficient to support an inference that Riha was attempting to do what the insurance company had employed him to do, and was thus sufficient to support a finding of liability on the part of the insurance company. This was a venue matter not unlike the case before us, and we are of the opinion that the record in this case supports the trial court's implied findings that Green's defamatory statements were referable to the duty owing by him to the Texam Oil Corporation and made in the discharge of that duty. On the first occasion of the utterance by Mr. Green, he was a director of Texam Oil Corporation, and the statement was made to one Mansker in the office of Green while discussing Mansker's completion of his drilling contract with Texam. Mansker, a drilling contractor, testified that on that occasion Green said: "Well, that Goddamn Pee Wee Poynor has been stealing oil from Texam and selling it to the Drilling Contractors". Mansker testified that on a subsequent occasion he was having coffee with Green at the Midland air terminal when Green again accused Poynor of stealing oil, and that he kept repeating that Pee Wee Poynor was stealing oil from Texam Oil Corporation. On this occasion Green was then President of the Texam Oil Corporation, but no business of Texam was discussed. Thus we have the first utterance made during the discussion of corporate business by a director, who, it could be argued, had no duty as a director to investigate thievery from the corporation, and the second utterance was made when no corporate business was being discussed, yet when the duty clearly existed on the President of the corporation to protect it from thievery. Whatever the duties of a corporate director might ordinarily be, it is apparent that Green was actively conducting corporation business on the first occasion, for Mansker testified that he went to Green's office to see about chang-

ing or completing his drilling contract with Texam. As President, the same man was still making the same statement about Poynor stealing from the corporation, so that the statements in the different capacities are connected in something of a continuing investigation or attendance to the business of the corporation. It should also be noted that the element of personal animosity is not dominant, for Green was not saying simply that Poynor was a thief, or that he was stealing from him, but that he was stealing from Texam and selling to Texam drilling contractors. We think the evidence supports the trial court's implied findings in support of its judgment.

■ In deciding the "no evidence" points, we have considered only the evidence and the inferences tending to support the findings, and disregarded all evidence and inferences to the contrary. Commercial Standard Insurance Co. v. Leroy H. Allred, 413 S.W.2d 910 (Tex.1967). In passing on the "insufficient evidence" points, we have considered all the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

■ We overrule appellants' assignment of error that the plaintiff's controverting affidavit was insufficient to permit the introduction of evidence as to his residence, for such evidence was introduced without objection, and without any exception to the pleadings prior to appeal. This case is distinguishable from A. H. Belo Corporation v. Blanton (supra) where the controverting affidavit incorporated the plaintiff's petition for the limited purpose of showing that his was a suit for libel and slander. Here, plaintiff incorporated his petition into his controverting affidavit fully, "as if said Petition was copied herein verbatim", and such petition contained the specific dates on which the slanderous words were uttered—October 4, 1966, and January

*27, 1967*—and his proof was that he resided in the county of suit on those dates.

All assignments of error are overruled and the judgment of the trial court is affirmed.