Pamela HUNT, Plaintiff-Appellant,

v.

Robert GERLEMANN and Bouef & Berger Mutual Insurance Co., Inc., a corporation, Defendants-Respondents.

No. 40395.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 24, 1979.

Morley & Boeckman by Daniel V. Boeckman, O'Fallon, for plaintiff-appellant.

William D. Kimme, Washington, for defendants-respondents.

GUNN, Judge.

Plaintiff-appellant Pamela Hunt instituted this suit for slander per se against defendants-respondents Robert Gerlemann, her former insurance agent, and Bouef & Berger Mutual Insurance Company, his employer. The defendants filed a motion to dismiss the suit for failure to state a claim upon which relief could be granted. The trial court sustained the motion after allowing the plaintiff to amend her petition twice. From that order she now appeals. We reverse the order of the circuit court and remand the cause.

We gather from the petition that the corporate respondent, Bouef & Berger Mutual, is engaged in the business of selling insurance, including insurance against loss by fire. Plaintiff Hunt evidently purchased such a policy for her home from Bouef & Berger Mutual through its agent defendant Gerlemann. Subsequently, plaintiff's home was extensively damaged by fire and she filed a claim with the defendant insurance company. The petition alleged that immediately after making payment of the claim defendant Gerlemann made the following allegedly slanderous statements to plaintiff in the presence of others:

"How did you set the fire?

If you rebuild, don't call us.

You'll be lucky to find anybody to insure you."

Plaintiff prayed for general damages based upon the reputed injury to her good name and for mental pain and anguish. She also sought punitive and exemplary damages for the willful rendering of the slanderous statements.

The sole issue in this case is whether the foregoing statements in the petition alleged to be slanderous per se are capable of defamatory meaning on their face—a meaning which would be understood by a third party without the aid of innuendo.

In Missouri, only four categories of slanderous statements are generally recognized as "per se" actions: those which impute a crime, a loathsome disease, the unchastity of a woman and those affecting the offended party in his trade or business. *Brown v. Kitterman*, 443 S.W.2d 146 (Mo. 1969). If the plaintiff here has pleaded a proper case of slander per se, she need not allege as a prerequisite to recover any special damages because the law presumes her injury. *Riss v. Anderson*, 304 F.2d 188 (8th Cir. 1962). Defendants contend that agent Gerlemann's comments were not obviously defamatory and, therefore, plaintiff's failure to allege special damages has rendered

her petition insufficient to state a cause of action. *Brown v. Kitterman,* supra. Plaintiff counters that the agent falsely accused her of an indictable crime—arson of insured property as defined in § 560.030, RSMo 1969. *See,* e. g., *Priest v. Central States Fire Ins. Co.,* 223 Mo.App. 122, 9 S.W.2d 543 (1928). Our obligation is to determine if the facts pleaded and the reasonable inferences to be drawn therefrom, when viewed in the light most favorable to the pleader, invoke substantive principles of law which entitle her to relief. *B. G. DeMaranville v. FeeFee Trunk Sewer, Inc.,* 573 S.W.2d 674 (Mo.App.1978).

For the petition here to state a cause of action, the allegedly slanderous language must without reference to any innuendo accuse the plaintiff of a crime. *Langworthy v. Pulitzer Publishing Co.,* 368 S.W.2d 385 (Mo.1963). The accusation need not be direct, but if not, it must be the only inference that could be reasonably drawn from the language used. *Walker v. Kansas City Star Co.,* 406 S.W.2d 44 (Mo.1966); *Hoog v. Strauss,* 567 S.W.2d 353 (Mo.App. 1978). The words, although not required to be uttered with precision, must be naturally and presumably understood by third parties to constitute an allegation that plaintiff committed, in this case, arson. Under the circumstances, we believe that persons who heard these statements could have so understood. Though we are prevented from considering extrinsic matters which attempt to impute a slanderous meaning to words which are otherwise innocent on their face, it is clear that the pleadings may be used to place the actionable language in some sort of context without destroying the plaintiff's "per se" cause. *See, Lightfoot v. Jennings,* 363 Mo. 878, 254 S.W.2d 596 (1953); *Tincher v. National Life & Accident Ins. Co.,* 235 Mo.App. 663, 146 S.W.2d 663 (1940); *Atterbury v. Brink's Express Co.,* 90 S.W.2d 807 (Mo.App.1936). For example, in *Lightfoot v. Jennings,* supra, plaintiff Lightfoot alleged that in the course of a public meeting, the defendant stated: "M.D. Lightfoot was paid by private utility money to defeat the bond issue." In response to the defendant's charge, plaintiff read aloud a complete list of contributors to the campaign fund against the bond issue and swore under an oath administered by a notary public that the statements he read were true and correct. Following plaintiff's oath, the defendant allegedly stated: "M.D. Lightfoot is slick enough to cover it up—no sworn statement can change the truth." The plaintiff contended that the defendant's language ascribed to him the crime of making a false affidavit. The Supreme Court ultimately found in defendant's favor because technically no affidavit was ever drawn. However, it is evident from the court's language and reasoning that the allegedly slanderous statements were analyzed in the context of the time when, and the place where they were uttered:

> Whether language has that tendency (that is, whether it is defamatory and actionable without proof of special damages) depends, among other factors, upon the temper of the times, the current of contemporary public opinion, with the result that words, harmless in one age, in one community, may be highly damaging to reputation at another time or in a different place. *Id.* at 599, quoting *Mencher v. Chelsey,* 297 N.Y. 94, 100, 75 N.E.2d 257, 259 (1947).

Not only did the court recognize the circumstances which gave rise to defendant's language but even considered factors which were outside the pleadings. From these statements, we conclude that while the plaintiff may not resort to explanatory or interpretive allegations in her per se petition, neither must the offensive language be scrutinized in a vacuum.

Our conclusion that plaintiff has pleaded a proper case is not inconsistent with the frequently repeated pronouncements of the law of slander or libel per se. [E. g.: "In determining whether language is libelous per se, it must be viewed stripped of any pleaded innuendo. The meaning of the phrase 'per se' is 'taken alone, in itself by itself.' Words which are libelous per se do not need an innuendo, and conversely, words which need an innuendo are not libelous per se.'" *Langworthy v. Pulitzer Pub-*

lishing Co., supra at 388, 389, citing *Shaw Cleaners & Dyers, Inc. v. Des Moines Dress Club*, 215 Iowa 1130, 245 N.W. 231 (1932).] Somewhere on the spectrum of pleadings between the naked allegations of defamatory language and understanding listener and the fully dressed interpretations of defamation via inducement, colloquim and innuendo, lies plaintiff's actionable slander per se complaint.

In the context of the conversation between the insurance agent and insured following payment for a claim arising out of a fire damage the statement "How did you set the fire?" could be a forceable imputation of arson. Of course, plaintiff will have to demonstrate at trial that the hearers understood defendant's comment in that manner. Plaintiff's pleaded conclusion that they did will not suffice. But in this extremely close and bothersome case we hold that opposed to a motion to dismiss, plaintiff's petition does state a cause of action and that the judgment of dismissal should be reversed and the cause remanded.

Reversed and remanded.

REINHARD, P. J., and CRIST, J., concur.