# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 7, 2000 Session

## REGINA L. CABLE  v. CHARLES E. CLEMMONS, JR.

**Appeal By Permission from the Court of Appeals, Eastern Division**
**Circuit Court for Knox County**
**No. 79492     Bill Swann, Judge**

---

**No. E1998-00526-SC-R11-CD - Filed January 3, 2001**

---

We granted this appeal to determine the following two issues: 1) whether double jeopardy bars multiple convictions for criminal contempt based on violations of an order of protection and 2) whether domestic violence counseling may be imposed as part of the sentence for criminal contempt. After finding the defendant guilty of six counts of criminal contempt, the trial court's sentence consisted of 1) ten days in jail for each act of contempt to be served consecutively and 2) forty-five weeks of domestic violence counseling.  A new order of protection was issued.  The Court of Appeals held that the evidence supported only one conviction for criminal contempt and that the trial court lacked the authority to impose counseling as part of a sentence for criminal contempt.  After reviewing the record and authority, we hold that double jeopardy does not bar multiple convictions for criminal contempt and that the evidence supports three convictions in this case.  We further hold that although the legislature has not specifically authorized domestic violence counseling as a sentence for criminal contempt, the trial court properly imposed the requirement as part of a new order of protection.

**Tenn. R. App. P. 11  Appeal by Permission; Judgment of the Court of Appeals Reversed and Case Remanded to the Trial Court**

E. RILEY ANDERSON, C.J., delivered the opinion of the court, in which ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.  FRANK F. DROWOTA, III, not participating.

Oliver S. Thomas, John A. Bell, Catherine P. Kligerman, and Theodore R. Kern,  Knoxville, Tennessee, for the appellant, Regina L. Cable.

Jonathan A. Moffatt, Knoxville, Tennessee, for the appellee, Charles E. Clemmons, Jr.

# OPINION

## BACKGROUND

Regina L. Cable and the defendant, Charles Clemmons, Jr., lived together and had a minor child. On June 2, 1998, Cable sought an order of protection, alleging that Clemmons had threatened to shoot her and had grabbed her hair. She also alleged that Clemmons, on prior occasions, had pulled a gun and had abused her physically. On the same day, an ex parte order of protection was entered, by which Clemmons was "restrained and prohibited from abusing, threatening to abuse, or committing acts of violence" upon Cable.

On June 11, 1998, following a hearing, the trial court entered a "proof order of protection without social contact." The order stated that Clemmons was "enjoined from coming about [Regina L. Cable] for any purpose and specifically from abusing, threatening to abuse, or committing any acts of violence upon [Cable] upon penalty of contempt." The order further prohibited Clemmons from contacting Cable "by any means whatsoever, upon pains of 10 days in jail" for each violation.

On August 23, 1998, Clemmons was arrested on charges of violating the order of protection. At a later bench trial, Cable testified that on August 23, 1998, Clemmons telephoned her and the two met for dinner. During dinner Clemmons drank excessively. After dinner, Cable gave Clemmons a ride to a motel. On the way to the motel, Cable declined to spend the night with Clemmons. Clemmons became angry, grabbed Cable by her hair, and pushed her head against the car window. He then pulled a knife and threatened to kill her. Cable pulled to the side of the road and got out of the car. Clemmons followed her out of the car and then kicked and stabbed the car. Cable fled from the scene and called 911. Clemmons was arrested for violating the order of protection.

Clemmons testified that he telephoned Cable and that the two had dinner. He admitted that he drank alcohol but denied he was intoxicated. Clemmons admitted that he and Cable had an argument but he denied that he grabbed her hair, struck her, or harmed her physically. Clemmons also denied that he threatened Cable with a knife or that he damaged her car. Clemmons testified that he went to his motel room after dinner and was later arrested by police officers.

The trial court found Clemmons guilty of six counts of criminal contempt for violating the order of protection. The first two convictions were based on grabbing Cable while in the car; the third conviction was based on pushing Cable's head against the car window; the fourth conviction was based on pulling a knife; the fifth conviction was based on threatening to kill Cable; and the sixth conviction was based on damaging Cable's car. The trial court sentenced Clemmons to serve 10 days for each conviction to be served consecutively; ordered Clemmons to undergo 45 weeks of domestic violence counseling; and issued a new order of protection.

The Court of Appeals held that the trial court erred in finding Clemmons guilty of six counts of criminal contempt. The appellate court determined that the underlying acts were so closely

related as to time, place, and proximity that they constituted only one violation of the order of protection and, therefore, supported only one conviction for criminal contempt. The Court of Appeals also held that the trial court lacked the authority to order domestic violence counseling as a part of a sentence for criminal contempt counseling and vacated the requirement.

We granted this appeal to address these important issues.

## ANALYSIS

### Domestic Abuse

We begin our analysis by examining the relevant statutory provisions that have been enacted by the legislature to "recognize the seriousness of domestic abuse as a crime and to assure that the law provides a victim of domestic abuse with enhanced protection from domestic abuse." See Tenn. Code Ann. § 36-3-618 (1996).

"Domestic abuse" is defined by the legislature as "inflicting or attempting to inflict physical injury on an adult or minor by other than accidental means, placing an adult or minor in fear of physical harm, physical restraint, or malicious damage to the personal property of the abused party." Tenn. Code Ann. § 36-3-601(1) (Supp. 1999). Any person who has been subjected to or threatened with domestic abuse by a present or former adult family or household member may seek relief by filing a sworn petition alleging such domestic abuse by the respondent. See Tenn. Code Ann. § 36-3-602 (Supp. 1999).

Upon the filing of a petition, a court may issue an ex parte order of protection for "good cause," which is defined as an "immediate and present danger of abuse to the petitioner." Tenn. Code Ann. § 36-3-605(a) (1996 & Supp. 1999). Within 15 days of service on the respondent, the court shall hold a hearing and either dissolve the ex parte order, if one had been issued, or extend the order of protection for a definite period of time not to exceed one year. Tenn. Code Ann. § 36-3-605(b) (1996 & Supp. 1999).

An order of protection is aimed at protecting the petitioner from abuse. It may prohibit the respondent from 1) abusing or threatening to abuse the petitioner or the petitioner's minor children; 2) telephoning, contacting, or otherwise communicating with the petitioner directly or indirectly; or 3) stalking the petitioner. Tenn. Code Ann. § 36-3-606(a)(1) - (3) (1996 & Supp. 1999). It may also address issues such as housing, custody of children, and financial support. See Tenn. Code Ann. § 36-3-606(a)(4) - (7) (1996 & Supp. 1999). Finally, the order may require the respondent to attend "available counseling programs that address violence and control issues or substance abuse problems." Tenn. Code Ann. § 36-3-606(a)(8) (1996 & Supp. 1999).

When a person is arrested for violating an order of protection, the court shall conduct a hearing to determine whether to hold that person in contempt of court. See Tenn. Code Ann. §§ 36-

3-611 and -612 (1996 & Supp. 1999). The court "may hold the defendant in civil or criminal contempt and punish the defendant in accordance with the law." Tenn. Code Ann. § 36-3-610(a) (1996).

## Double Jeopardy

We now turn to the first issue in this case, which is whether Clemmons' multiple convictions for contempt based on his violations of the order of protection violate double jeopardy principles.

The double jeopardy clause in the United States Constitution provides that no person "shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. Similarly, the Tennessee Constitution states that "no person shall, for the same offense, be twice put in jeopardy of life or limb." Tenn. Const. art. I, § 10.

The constitutional right against double jeopardy protects against 1) a second prosecution after an acquittal; 2) a second prosecution after a conviction; and 3) multiple punishments for the same offense. State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996); see also Whalen v. United States, 445 U.S. 684, 688, 100 S. Ct. 1432, 1435-36, 63 L. Ed. 2d 715 (1980). The issue here concerns the third of these protections: that is, whether Clemmons' multiple convictions for contempt constitute punishment for the same offense under the facts of this case.

In State v. Denton, we established the analytical framework for determining whether a defendant has received multiple punishments for the "same offense." The courts must consider 1) the statutory elements of the offenses, guided by the principles in Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932); 2) the evidence used to establish the offenses, guided by the principles in Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); 3) whether the defendant's conduct involved multiple victims or discrete acts; and 4) whether the purpose of the respective statutes at issue is the same or different. Denton, 938 S.W.2d at 381. No single aspect of this analysis is given controlling weight; each factor must be weighed and considered in relation to the others. See State v. Beauregard, ___ S.W.3d ___ (Tenn. 2000).

Applying the first factor of the Denton analysis – the statutory elements of the offenses – to this case, we observe that only one statute is involved because each conviction was for criminal contempt. Included in the statutory elements of the single contempt statute is the phrase "willful disobedience . . . to [a] lawful . . . [court] order." See Tenn. Code Ann. § 29-9-102(3) (1980). Accordingly, we also need not compare the purpose of the contempt statute with any other statute as is ordinarily required by the fourth Denton factor. In short, Clemmons' convictions do not involve multiple or distinct statutes.

With regard to the second Denton factor, however, we find that different evidence was used to establish three convictions for violating the order of protection. For example, evidence to establish the first conviction occurred when an argument began and Clemmons grabbed Cable and pushed her head against the car window. The evidence of the second conviction was that Clemmons

produced a knife and threatened to kill Cable. Finally, the evidence of the third conviction was that after Cable pulled over and fled from the scene, Clemmons vandalized her car by kicking it and striking it with a knife.

With regard to the third Denton factor, we also conclude that although the offenses involved a single victim, they consisted of separate and distinct acts. As noted above in our analysis of the second Denton factor, Clemmons abused Cable physically; produced a knife and threatened to kill her; and then vandalized Cable's personal property. These acts constituted separate and distinct types of abuse, all of which were prohibited under the order of protection. See Tenn. Code Ann. §§ 36-3-601 and -606(a) (1996 & Supp. 1999). The fact that the acts were closely related in time and place does not render them inseparable; indeed, emphasizing only time and place is tantamount to a "same transaction" analysis, which is not part of the Denton analysis.[1]

We therefore conclude that double jeopardy principles do not bar multiple convictions and punishments in this case. The record, however, supports only three convictions and not six as found by the trial court.[2] As we have discussed above, there were three distinct and separate acts committed by Clemmons – physically abusing Cable, threatening to kill her with a knife, and damaging her personal property – that violated the order of protection and supported a separate conviction for contempt. See Black v. Blount, 938 S.W.2d 394 (Tenn. 1996) (evidence supported three contempt convictions); State v. Turner, 914 S.W.2d 951 (Tenn. Crim. App. 1995) (evidence supported three contempt convictions). In sum, we conclude that double jeopardy principles do not bar Clemmons' convictions for three counts of contempt under the facts of this case.

### Counseling

We next turn to the issue of whether the trial court has the authority to order counseling for domestic abuse when a defendant has violated an order of protection and has been found guilty of contempt.

The statutes provides that "[u]pon violation of the order of protection . . ., the court may hold the defendant in civil or criminal contempt and punish the defendant in accordance with the law." Tenn. Code Ann. § 36-3-610(a) (1996). The statutes also provide that the failure to attend

---

[1] Moreover, this Court has repeatedly rejected the view that multiple offenses must be considered the same offense if occurring as part of the "same transaction." State v. Duchac, 505 S.W.2d at 239 ("The majority rule and . . . the rule in Tennessee is that the 'same transaction' test is not the law . . . ."). This Court explained that "[i]f the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes." Id. at 239; see also State v. Denton, 938 S.W.2d at 380.

[2] In our view, and as Cable concedes on appeal, the evidence does not warrant separate convictions for Clemmons' grabbing of Cable and pushing her head against the window, nor does the evidence warrant separate convictions for Clemmons' producing a knife and threatening the victim. Moreover, although Clemmons' initial contact with Cable itself appeared to violate the terms of the order of protection, and would have served as a fourth conviction, the petition did not allege and the trial court did not find a violation on this basis.

counseling sessions as directed in an order of protection "may be punished as criminal or civil contempt." Tenn. Code Ann. § 36-3-606(a)(8) (1996 & Supp. 1999).

As these statutes indicate, there are two types of contempt – civil or criminal. We have previously discussed the differences between the two:

> Civil contempt occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce private rights. If imprisonment is ordered in a civil contempt case, it is remedial and coercive in character, designed to compel [a defendant] to comply with the court's order. Compliance will result in immediate release from prison. Therefore, it has often been said that in a civil contempt case, [a defendant] "carries the keys to his prison in his own pocket. . . ."
>
> Criminal contempts, on the other hand, are intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society. Therefore, sanctions for criminal contempt are generally both punitive and unconditional in nature. . . . In the trial of a criminal contempt case, therefore, guilt of the accused must be established by proof beyond a reasonable doubt.

Black v. Blount, 938 S.W.2d at 398 (all citations omitted).

This case involves criminal contempt: the trial court's judgment referred to criminal contempt; concluded that the allegations were proven beyond a reasonable doubt; and imposed a definite sentence that would not be terminated upon Clemmons' compliance with an order.[3] The applicable statute provides that "punishment for contempt may be by fine or by imprisonment, or both." Tenn. Code Ann. § 29-9-103(a) (1980 & Supp. 1999). The statute further states:

> Where not otherwise specifically provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days . . . .

Tenn. Code Ann. § 29-9-103(b) (1980 & Supp. 1999).

---

[3] The judgment included a condition that Clemmons receive in-house counseling while in jail and could not be released until he did so. Although this condition is in the nature of a remedy for civil contempt, it does not change our conclusion that the judgment was for criminal contempt.

-6-

As we have said, the statutory provisions regarding domestic abuse and orders of protection indicate that violations of an order of protection may be punished as civil or criminal contempt. See Tenn. Code Ann. §§ 36-3-606(a)(8) and -610(a) (1996 & Supp. 1999). It is also provided that "[i]n addition to the authorized punishments for contempt of court, the judge may assess any person who violates an order of protection . . . a civil penalty of fifty dollars ($50.00)." Tenn. Code Ann. § 36-3-610(b) (1996). Although there is no dispute that the court may impose counseling for domestic abuse or substance abuse as part of an order of protection, See Tenn. Code Ann. § 36-3-606(a)(8) (1996 & Supp. 1999), there is no specific statutory provision authorizing the imposition of counseling as part of the sentence for contempt.

Cable nonetheless argues on appeal that allowing counseling to be part of an order of protection but not for a violation of an order of protection is illogical and inconsistent with the legislative purpose of addressing domestic abuse. Cable also argues that the phrase "[w]here not otherwise specifically provided" as used in the contempt statute, See Tenn. Code Ann. § 29-9-103(b) (1980 & Supp. 1999), authorizes additional punishment such as counseling.

We agree that counseling would be a logical and potentially effective part of a sentence for contempt and that the legislature may wish to consider the issue. We cannot agree, however, that the legislature has "specifically provided" for counseling as an additional punishment under the present statutory provisions. As noted above, there is no specific provision allowing counseling to be ordered as part of the punishment for contempt. It is the legislature's responsibility to set the limits for punishment and the courts are not free to impose greater punishments without statutory authority. See State v. Davis, 940 S.W.2d 558, 562 (Tenn. 1997).

This does not mean, however, that Clemmons is entitled to relief under the facts of this case. The trial court, in addition to imposing the sentences, issued a new order of protection without social contact. The trial court's order stated that "this is a highly aggravated case" and noted that the "counseling provisions . . . will be strictly applied against the defendant in the hope he may be able to rehabilitate himself." In our view, by issuing a new order of protection, the trial court's requirement that Clemmons undergo counseling for domestic abuse falls within the statute allowing such counseling as part of an order of protection. See Tenn. Code Ann. § 36-3-606(a)(8) (1996 & Supp. 1999).

Accordingly, we agree with the Court of Appeals' conclusion that counseling is not specifically authorized as a punishment for contempt pursuant to Tenn. Code Ann. § 29-3-103 (1980 & Supp. 1999), but disagree that the counseling requirement must be vacated under the facts of this case. In our view, the counseling requirement is part of the new order of protection.

## CONCLUSION

We conclude that double jeopardy does not bar Clemmons' multiple convictions for criminal contempt and that the evidence supports three convictions in this case. We further hold that although

the legislature has not authorized domestic violence counseling as a sentence for criminal contempt, the trial court properly imposed such a requirement as part of a new order of protection. We therefore reverse the judgment of the Court of Appeals, and remand the case to the trial court for further proceedings consistent with this opinion. Costs of the appeal are taxed to the appellee, Charles E. Clemmons, Jr., for which execution shall issue if necessary.

_____
RILEY ANDERSON, CHIEF JUSTICE